**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tori Jade Hefley, | No. CV-25-00142-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 20), the Commissioner's answering brief (Doc. 22), and Plaintiff's reply (Doc. 23), as well as the Administrative Record (Docs. 12-19, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.     Procedural History

Plaintiff filed an application for benefits on January 27, 2020, alleging a disability onset date of December 28, 2019. (AR at 174.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On March 30, 2022, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id*. at 174-89.) However, in an April 28, 2023 order, the Appeals Council remanded to the ALJ to "[o]btain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding

consultative examinations and existing medical evidence" and "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (*Id.* at 197-98.)

On January 25, 2024, following a post-remand online video hearing, the ALJ issued another unfavorable decision. (*Id.* at 18-36.) The Appeals Council later denied review. (*Id.* at 1-4.)

II.     The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.    The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "degenerative disc disease; fibromyalgia; bilateral lower extremities edema; intracranial hypertension; headaches; sarcoidosis; obesity; anxiety disorder; neurocognitive disorder; and bipolar disorder." (AR at 21.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 22-25.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, she can lift and/or carry up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently; stand and/or walk for four hours in an eight-hour day and sit for six hours per eight-hour workday with normal breaks; engage in occasional bilateral operation of foot controls; no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; stooping; frequent crouching, crawling; no balancing as defined by the Selected Characteristics of Occupations; she can work with occasional exposure to excessive loud noise; occasional exposure to excessive vibration; occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases; occasional concentrated exposure to poorly ventilated areas; no exposure to dangerous moving machinery; no exposure to unprotected heights; no occupational driving; she can perform work involving understanding, remembering and carrying out simple instructions; work with occasional changes in a routine work setting; and work with no specific production rate work, such as that

---

[1]    The ALJ also determined that Plaintiff had the non-severe impairments of gastroesophageal reflux disease, pharyngoesophageal dysphagia, and palpitation. (AR at 21-22.)

found on an assembly line.

(*Id.* at 25.)

As part of this RFC determination, the ALJ conducted an extensive evaluation of Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 25-33.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Krishna Mallik, state agency medical consultant ("not fully persuasive"); (2) Q. Nguyen, M.D., state agency medical consultant on reconsideration ("not fully persuasive"); (3) Scott F. Kaper, Ph.D., state agency mental health consultant ("partially persuasive"); and (4) Anna Titus, Ph.D., state agency mental health consultant ("partially persuasive"). (*Id.* at 33-34.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was incapable of performing her past work as a baker and material handler, she was capable of performing three other jobs that exist in significant numbers in the national economy: (1) mail sorter; (2) office helper; and (3) retail marker. (*Id.* at 34-35.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 35-36.)

IV.     Discussion

Plaintiff raises two issues on appeal: (1) whether "[t]he ALJ erred by failing to properly assess Plaintiff's headache impairment pursuant to Social Security Ruling 19-4p and under Listing 11.02B"; and (2) whether "[t]he ALJ erred by omitting off-task behavior and absenteeism from the assigned residual functional capacity." (Doc. 20 at 5-12.) As a remedy, Plaintiff seeks a "remand . . . for further proceedings, including a clarification and redetermination of the claimant's RFC that is consistent with the entire record." (*Id.* at 12.)

A.     **Headache Impairment**

1.     The ALJ's Analysis

As noted, the ALJ determined during step three of the sequential analysis that

- 4 -

Plaintiff's impairments did not meet or medically equal a listing.  (AR at 22-25.)  As part of that determination, the ALJ individually analyzed Plaintiff's degenerative disc disease, sarcoidosis, fibromyalgia, headaches, obesity, and mental impairments.  (*Id.*)  With respect to Plaintiff's headaches, the ALJ's analysis was as follows:

> Because there is no listing specific to the evaluation of headaches or intracranial hypertension, the undersigned must determine whether the claimant's headaches medically equals the most closely analogous listing. SSR 19-4p recognizes that primary headache disorders are closely analogous to the criteria for dyscognitive seizures under listing 11.02, epilepsy.  Listing 11.00H defines dyscognitive seizures as seizures characterized by alteration of consciousness without convulsions or loss of muscle control, and which may result in blank staring, change of facial expression, and automatisms. Listing 11.02B requires a history of dyscognitive seizures occurring either at least once a week for at least three consecutive months despite adherence to prescribed treatment.  Listing 11.02D requires evidence of dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in either physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; or adapting or managing oneself.  However, the evidence does not establish that the claimant's headaches and intracranial hypertension occurred with the frequency or caused the level of limitation necessary to equal this listing.  Nor has an acceptable medical source so opined. Accordingly, the undersigned finds that the claimant's headaches are not of equal medical significance to the criteria of this listing.

(*Id.* at 23.)

Additionally, in a later portion of the decision addressing the persuasiveness of Plaintiff's symptom testimony, the ALJ provided the following discussion regarding Plaintiff's headaches:

> The undersigned also has considered the claimant's intracranial hypertension status post surgical placement of a VP shunt in her brain as well as headaches. Limitations are warranted to preclude lifting and carrying heavy weights, avoid hazards and heights in case dizziness might cause jeopardy in these dangerous situations.  The claimant must also avoid pulmonary irritants and loud noises that could potentially trigger a headache.  Additional limitations are not supported by the record, which shows the impairments to be well managed generally with a few exacerbations timely resolving with

adjustments in treatment. In addition, imaging confirmed the stability of the impairments. Considering the fluctuations of the impairment as it was treated over the course of the relevant period, the claimant reported that her headaches had resolved in October 2019 and she only had issues when she overdid activity. In December 2019, the claimant reported that her headaches were not as bad. The following month, it was reported that the claimant's VP shunt looked fine, and she was having severe headaches two times a week. In June 2020, the claimant reported that her headaches were doing well overall. In January 2021, the claimant was noted to have a stable MRI with normal small ventricles and good positions of the cisternal catheter. At this visit, the claimant's shunt was reprogrammed. In May 2021, the claimant's intracranial hypertension appeared well-controlled and her topiramate was increased. Imaging of the head was unremarkable. Imaging of the neck revealed V3-V4 junctions that were not well-demonstrated, and an otherwise unremarkable MRA. In July 2021, the claimant reported experiencing fifteen to twenty headaches per month of the type that started in her right and radiated to the right occiput and headaches occurring every two to three days of the thunderclap variety, and in August 2021, the claimant had her shunt adjusted, she had nonfocal examination, she was continued on topiramate, and she had a thunderclap headache that was resolved. The claimant denied headaches or dizziness in September 2021 and in January 2022. In June 2022, the claimant reported her headaches had improved, although headaches were poorly controlled in September 2022, and she was switched to new medication. The claimant denied headaches or dizziness in January 2023. As for visual issues, although the claimant's left eye showed subtle VF depression and mild optic disc edema in the right eye in June 2022, significant vision changes were typically denied or not found. The shunt was adjusted and interrogated in June 2022. As the relevant period proceeded, the claimant reported dizziness for only a day or two, and it thereafter improved, and a full neurological physical examination was within normal limits with no ataxia or nystagmus. Indeed, her videonystagmography testing was within normal limits. In June 2023, the claimant denied dizziness or headaches.

(*Id.* at 28-29.)

### 2.    The Parties' Arguments

Plaintiff contends that "[w]hile the ALJ purported to consider Plaintiff's headache impairment pursuant to SSR 19-4p, she failed to follow its specific guidance regarding the applicability of listing 11.02 to the step three medical equivalence analysis." (Doc. 20 at 6.) According to Plaintiff, "Listing 11.02B requires events that occur 'at least once a week

- 6 -

for at least 3 consecutive months . . . despite adherence to prescribed treatment'" and the ALJ failed to provide any "analysis or citation when concluding that the evidence does not establish that Plaintiff's headaches occur with the required frequency," even though "[t]he evidence specifically supports multiple three-month periods where the plaintiff has experienced headaches that occurred at least on a weekly basis." (*Id.* at 6-9.)

In response, the Commissioner argues that the ALJ permissibly concluded that Plaintiff failed to satisfy the frequency requirement because Plaintiff relied solely on "subjective reports of headache symptoms from March 2020 to November 2023," whereas Listing 11.20(B) requires "a detailed description from an acceptable medical source of a typical headache event." (Doc. 22 at 4-5.) The Commissioner elaborates: "Plaintiff cites her subjective responses on headache questionnaires, her subjective complaints of headaches to treatment providers, and her subjective allegations at her hearing. However, these sources reflect Plaintiff's subjective symptom allegations—not objective medical evidence. The regulations prohibit granting disability benefits solely on a claimant's subjective complaints, like Plaintiff has cited here. Thus, the ALJ reasonably did not rely on Plaintiff's allegations to find her condition medially equaled 11.02." (*Id.* at 5, citations omitted.) In the alternative, the Commissioner argues that "although Plaintiff points out periods that she alleged experiencing frequent headaches, it is not clear from her statements alone that her headaches met the criteria of 11.02B. Even if the ALJ had accepted the alleged frequency of her headaches as true, Plaintiff has not shown that the severity of her headaches over those periods was equivalent to dyscognitive seizures." (*Id.* at 6.) Finally, the Commissioner contends that "[t]o the extent that Plaintiff also contends that the ALJ did not sufficiently explain her finding that Plaintiff's headaches did not medically equal the listing, this is also incorrect. While the ALJ did not provide a lengthy discussion of headache-related evidence in the Step Three section, this discussion is not absent from the opinion. It is simply in a different section. In the section of the decision explaining the RFC, the ALJ discussed Plaintiff's headaches and headache-related treatment at length and explained why she discounted Plaintiff's reports about the frequency and severity of her

headaches.  It was not erroneous for the ALJ to summarize this analysis at Step Three, rather than restate it in full." (*Id.*)

In reply, Plaintiff contends that the Commissioner's arguments regarding "the alleged lack of objective evidence in the record" lack merit because (1) "the ALJ did not reject the application of SSR 19-4p for this reason"; (2) "evidence of record does contain a detailed description of a headache event as observed by a treating physician despite Defendant's claims to the contrary"; and (3) SSR 19-4p does not require "objective" evidence substantiating each claimed headache episode. (Doc. 23 at 2-3.)

####    3.    Analysis

The Court finds no harmful error in the ALJ's step-three analysis regarding Plaintiff's headaches.  As an initial matter, the rule in the Ninth Circuit is that "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).[2]  This case does not involve a boilerplate finding.  To the contrary, the ALJ provided a detailed, standalone paragraph in the step-three section of the decision explaining why Plaintiff's headaches did not meet or medically equal "the most closely analogous listing" and then provided a separate, lengthy paragraph in a later section of the decision that addressed the frequency and severity of Plaintiff's headaches.  (AR at 23, 28-29.)  Based on that discussion, the ALJ ultimately concluded that "the evidence does not establish that the claimant's headaches and intracranial hypertension occurred with the frequency or caused the level of limitation necessary to equal this listing.  Nor has an acceptable medical source so opined."  (AR at 23.)

---

[2]    In 2017, the SSA "promulgated a new Social Security Ruling . . . [that] states that no explanation is required when finding a claimant does not meet or equal a listing." *Jerry W. v. Comm'r of Soc. Sec.*, 2019 WL 7819645, *4 (W.D. Wash. 2019).  Nevertheless. "the Ninth Circuit has continued to uphold [its] finding in *Lewis* that '[a] boilerplate finding is insufficient to support a conclusion' that a claimant's impairment does not meet or equal a listing." *Id.* (citations omitted). *See also Breanne L. F. v. Comm'r of Soc. Sec.*, 2024 WL 3289606, *10 (W.D. Wash. 2024) ("Like the Ninth Circuit and other district courts that have addressed the issue, this Court will continue to follow Ninth Circuit precedent regarding boilerplate equivalency findings given that SSRs, while binding on ALJs, do not carry the 'force of law.'").

Although Plaintiff's briefing focuses on the sufficiency of the ALJ's finding as to the frequency of her headaches (and, relatedly, on the form of evidence—objective versus subjective—that must be proffered in this context), Plaintiff ignores that the ALJ identified a separate and distinct reason for the adverse step-three determination—namely, that Plaintiff's headaches did not "cause[] the level of limitation necessary to equal" the applicable listing. (AR at 23.)  Plaintiff does not address (let alone challenge) this aspect of the ALJ's decision in the relevant portions of her opening brief (Doc. 20 at 5-9) or her reply brief (Doc. 23 at 2-3), even though it was distinctly identified in the Commissioner's answering brief (Doc. 22 at 6) as an independent basis for affirmance.  For this reason alone, affirmance is warranted.

At any rate, Plaintiff has failed to establish that the ALJ's "level of limitation" finding was unsupported by substantial evidence.  The chart appearing on pp. 6-8 of Plaintiff's opening brief only attempts to document the frequency of Plaintiff's headaches, and the few descriptions of those headaches appearing within the chart (*e.g.*, "daily," "bad," "worsening," "minor," "major," "frequent," "orthostatic," "migraine," "improved," "more," "poorly controlled") shed little light on their severity or the level of limitation they caused.  This sort of showing is insufficient in the step-three context, as "[t]he mere existence of headaches is insufficient to meet that [SSR 19-4p] standard.  In contrast, having severe migraines that are accompanied by dizziness and fainting spells is sufficient to require an ALJ to address whether those headaches are the medical equivalent of dyscognitive seizures.  Similarly, when a claimant has migraines that are so severe that they keep the claimant from driving, from standing for long periods of time, and from focusing the claimant's eyes, then the headaches are the medical equivalent of Listing 11.02(B) dyscognitive seizures." *Mills v. O'Malley*, 2024 WL 150292, *2 (E.D. Ky. 2024) (citations omitted).  *See also McCabe v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3080951, *16-18 (D. Ariz. 2023) ("Although McCabe's reports of her symptoms, as documented in her treatment notes, indicate light sensitivity (photophobia), the vast majority of the treatment notes indicate no aura or other visual disturbance, or alteration of awareness

. . . . There is no doubt, per her physicians' reports and clinical findings, that McCabe suffered from headaches and migraines, but . . . [a]lthough McCabe reported photophobia and occasionally vertigo, she did not report any other visual disturbances (such as aura), and the vast majority of the treatment notes indicate the migraines were 'without aura' . . . . Given the high bar for establishing medical equivalency to a listing, the ALJ's conclusion that McCabe's migraines were not medically equivalent to a listed impairment was not legal error or unsupported by the record evidence."); *Jennifer M. A. v. Saul*, 2021 WL 1056426, *8 (D. Kan. 2021) ("Plaintiff has not shown that her headaches medically equal the severity of Listing 11.02(B or D) (dyscognitive seizures) as required by SSR 19-4p. The SSR . . . acknowledges it would be uncommon for a primary headache disorder (and the court assumes Plaintiff has such a disorder) to be medically equivalent in severity to a dyscognitive seizure. This is likely so because the regulations note, [d]yscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. . . . Here, Plaintiff has not shown that her headaches are equivalent in severity to an alteration of consciousness.") (cleaned up).

### B.    **RFC Formulation**

#### 1.    The Parties' Arguments

Plaintiff contends that, "due to the nature of the severe impairments in this case, and the evidence detailing them, the ALJ should have incorporated a corresponding limitation in the assigned RFC related to off task behavior (which would include extra breaks) as well as absenteeism during exacerbation." (Doc. 20 at 11.)  According to Plaintiff, "[t]he ALJ did not account for exacerbations in the decision, instead presenting a factually incorrect picture of successfully treated conditions that only require minimal medication adjustments at times." (*Id.*)  Plaintiff also notes that, during the final part of the hearing, the ALJ made the oral statement "I was looking more towards worsening as of like May or April of 2022. I think the record, since that time, she would've had difficulty working, would've been off

task" and included, in one of the hypotheticals to the VE, "an individual who was off task in a work setting 15% of the time." (*Id.* at 11-12, citing AR 73, 76.)  According to Plaintiff, it was reversible error for the ALJ to fail to explain, in the written decision, why those contemplated limitations were omitted from the RFC.  (*Id.* at 12.)  Plaintiff contends the omission was not harmless "because the [VE] testified that an individual who is either off-task 15% of the time or absent approximately two days per month would be precluded from full-time employment."  (*Id.*)

In response, the Commissioner contends it was rational for the ALJ to omit any off-task and absenteeism limitations from the RFC.  (Doc. 22 at 7.)  For example, the Commissioner notes that the ALJ made various findings regarding Plaintiff's improvement from treatment, which findings tend to negate any "need for excessive absences or time off task."  (*Id.* at 7-10.)  The Commissioner also contends that it was reasonable for the ALJ to conclude that Plaintiff's "significant daily activities" were inconsistent with a need for absences or time off.  (*Id.* at 10.)  Next, the Commissioner emphasizes that "no medical opinion or prior administrative medical finding in the record suggested that Plaintiff required excessive absences or time off task due to pain, fatigue, or other symptoms.  Both State agency medical consultants who reviewed Plaintiff's record found that she could perform a range of medium work with no mention of a need for time off task or absences." (*Id.*)  Next, the Commissioner argues that Plaintiff cannot rely on her own subjective testimony to establish the need for off-task and absenteeism limitations, particularly where the ALJ did not fully accept her testimony.  (*Id.* at 11.)  Last, the Commissioner argues that the ALJ's oral statement during the hearing does not change the outcome because it was not definitive and, in any event, "an ALJ's statements at the hearing do not constitute a final decision by the Commissioner.  Rather, it is the ALJ's hearing decision that is binding on all parties."  (*Id.*, citing 20 C.F.R. § 404.955.)  The Commissioner concludes: "[R]egardless of what implications might be gleaned by the ALJ's oral statement, the administrative record contains sufficient evidence to support her ultimate findings in the decision.  As such, substantial evidence supports the ALJ's RFC assessment." (*Id.* at 12.)

In reply, Plaintiff contends that the record contains "several items of uncontroverted evidence exhibiting [her] reduced functioning (which would necessarily cause[] absences or required breaks), including 'days down' following infused treatment for her auto-immune disease, required . . . breaks during physical therapy session to allow her symptoms to calm down, reduced housework or no housework due to headaches at least 15 days out of the month, required help from mother for showering, etc." (Doc. 23 at 3-4.)  Plaintiff continues: "Because the plaintiff had alleged an[] inability to sustain regular employment and the evidence of record supported the same, the ALJ was required to explain why she rejected including absenteeism or off-task behavior due to pain, fatigue or the need for extra breaks into the RFC.  An ALJ's failure to identify specific statements and explain why they are not credible precludes meaningful review of the ALJ's reasoning . . . ." (*Id.* at 5.)  Next, Plaintiff "rejects the idea that her response to treatment for her headaches and intracranial hypertension has eliminated exacerbations of these symptoms that lead to decreased functioning" and also disputes the Commissioner's arguments concerning her daily activities, arguing that she "does not disagree that there are times when she is able to accomplish tasks or accompany her family, but the law does not require that this very young adult be utterly incapacitated in order to support her allegations." (*Id.* at 5-7, cleaned up.)  Finally, as for the ALJ's oral statement, Plaintiff criticizes the Commissioner for attempting to "include[] a qualification of the statement that does not exist in the transcript" and argues that "[i]n addition to the ample evidence corroborating the plaintiff's allegations that her symptoms often become severe enough to prevent her from engaging in work and other activities on a regular basis, the plaintiff was entirely unable to function independently for this several month period in 2022." (*Id.* at 7-8.)

### 2.    Analysis

"The ALJ assesses a claimant's RFC based on all the relevant evidence in the case record.  The ALJ must consider both the medical evidence and descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by the

claimant, family, friends, and other people.  The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate.  In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 587 U.S. at 102.

It is the ALJ's province to translate and incorporate medical findings into an RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).  But "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  When the ALJ employs a VE to ascertain whether work exists at step five, the ALJ's hypothetical questions to that expert must set forth all of the limitations supported by the record.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Applying these standards, Plaintiff has failed to establish that the ALJ committed harmful error when formulating her RFC.  Although Plaintiff contends her RFC should have included off-task and absenteeism limitations, none of the medical sources who provided opinions in this case indicated that such limitations were required.  (AR 148-51 [Dr. Nguyen]; *id.* at 151-54 [Dr. Kaper]; *id.* at 165-66 [Dr. Mallik]; *id.* at 166-68 [Dr. Titus].)  The ALJ concluded that all of those medical sources' opinions were at least partially persuasive (*id.* at 33-34) and Plaintiff has not raised, in this appeal, any challenge to the ALJ's evaluation of the medical source opinion evidence.  For that reason alone, there is substantial evidence supporting the ALJ's decision to omit any off-task and absenteeism limitations from the RFC.  *Cf. Lechuga v. Comm'r of Soc. Sec. Admin.*, 2023

WL 2534831, *4 (D. Ariz. 2023) ("The Court finds no harmful error in the ALJ's RFC formulation here. As an initial (and perhaps dispositive) matter, the ALJ followed the exact process that the relevant authorities and regulations require ALJs to follow when making an RFC determination—the ALJ expressly considered all of the medical opinions in the record, as well as Plaintiff's subjective testimony regarding her symptoms and the testimony of third-party witnesses regarding Plaintiff's symptoms, and provided reasons for crediting or not crediting each of those evidentiary sources. The ALJ also explained that the RFC was supported by the opinions of several medical sources whom the ALJ deemed credible and persuasive. Plaintiff conspicuously does not challenge the ALJ's evaluation of those medical sources' opinions or attempt to show that the RFC was somehow inconsistent with their opinions.").

Notwithstanding the medical sources' unchallenged opinions, Plaintiff seeks to rely on her own testimony as evidence establishing the need for off-task and absenteeism limitations in the RFC. The problem with this approach is that the ALJ chose to discredit Plaintiff's testimony (and provided an extensive explanation for that decision, *see* AR at 25-33) and Plaintiff has not raised, as an assignment of error in this appeal, a challenge to the ALJ's evaluation of her testimony. In effect, Plaintiff is attempting to raise a backdoor challenge on that issue by arguing—in the guise of a challenge to the RFC determination— that the ALJ was required to accept *certain aspects* of her testimony as they relate to absenteeism and off-task behavior. But this approach ignores that once the ALJ decided to discredit Plaintiff's testimony—a decision as to which Plaintiff has now forfeited any challenge—the "ALJ could permissibly discount the entirety of" that testimony. *Hernandez v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2502334, *4 (D. Ariz. 2025) (citations omitted). *Cf. Lechuga*, 2023 WL 2534831 at *5 ("[T]he ALJ's finding that Plaintiff's symptom testimony was not fully credible—which itself is free of harmful error, as discussed in Part IV.B below—obviated the need for the ALJ to specifically explain, in the portion of the decision formulating the RFC, each of Plaintiff's claimed symptoms.").

Finally, although the ALJ's oral statement and hypothetical to the VE may suggest

that the ALJ was considering, during the hearing, whether to include off-task and absenteeism limitations from the RFC, it doesn't follow that the ALJ was required to include those limitations in the final version of the RFC specified in the written decision or provide an explanation for their absence. *See, e.g., McCaskill v. Dep't of Health & Human Servs.*, 640 F. App'x 331, 335 (5th Cir. 2016) ("It is improper to characterize the ALJ's comment at the remand hearing as a finding of fact. . . . Not only should the written decision control over the ALJ's oral statement but here the record clearly shows this was a premature impression because the ALJ subsequently issued a detailed written decision based on all the record evidence."); *Smith v. Astrue*, 2009 WL 4067393, *4 (E.D. Va. 2009) ("[N]o authority mandates that an ALJ's written decision must comport with the comments previously made at the administrative hearing. Although the ALJ's commentary during the hearing was perhaps confusing or misleading, Plaintiff has not demonstrated any reason why the oral statements, rather than the written decision, should be binding. In particular, Plaintiff has failed to cite any statute, regulation, or case mandating that the ALJ's subsequent written decision must be consistent with prior oral statements. Indeed, the Code of Federal Regulations . . . makes it clear that a written decision is the mechanism for the ALJ to render his decision, absent the limited circumstances where an oral decision is permissible. The Court thus finds that the ALJ's statements on the record cannot disturb the final written decision.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of March, 2026.

_____
Dominic W. Lanza
United States District Judge

- 15 -